ORDERED.

Dated: October 15, 2019

*Cynthia C. Jackson*
Cynthia C. Jackson
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

In re:

Deborah A. Montevechi,            Case No. 6:17-bk-07008-CCJ
                                     Chapter 7
           Debtor.
_____/

Deborah A. Montevechi,            Adv. Case No. 6:18-ap-00008-CCJ

           Plaintiff,

v.

United States of America,
United States Department of Education,
Great Lakes Higher Education Corporation

           Defendant.
_____/

## MEMORANDUM OPINION

This proceeding came before the Court upon the Debtor's complaint to determine that her student loan debt is dischargeable under 11 U.S.C. § 523(a)(8) because it would impose an undue hardship. The Court has considered the evidence and the arguments of the parties and for the reasons set forth below, the Court will grant judgment in favor of the United States Department of Education (the "Defendant").

**Facts**

The Debtor is a single woman in her fifties, with no known health issues. The Debtor lives in Winter Springs, Florida and owns her home free and clear of all liens.[1] The Debtor has two adult children and no dependents.

In 2014, the Debtor borrowed $21,090 in Parent PLUS loans from the Defendant under the William D. Ford Direct Loan Program.[2] The balance on the student loan (the "Loan") as of March 26, 2018, is $25,678.96.[3] The Debtor has only made one payment of $505.97 in the five years since taking out the Loan.[4]

The Debtor borrowed the monies to cover the education expenses of her son while he attended college. The Debtor testified at a deposition that her son hopes to help make payments on the Loan after he graduates from college in May of 2019.[5]

The Debtor had a successful career in the banking industry and financial sector, despite not attending college. The Debtor worked at Crown Bank for twenty-two years. She started as a teller and worked her way up to Vice President of Operations where she earned approximately $80,000 a year. In 2007, Crown Bank closed after it was bought out by RG Premier Bank. For the next eight years, until 2015, the Debtor worked at United Financial Services ("United Financial") where she earned approximately $77,000 a year.[6] In 2016, United Financial offered the Debtor a job in Ohio. The Debtor testified that she left the company because she was not willing to move. To cover her living expenses in 2016, the Debtor withdrew funds from her 401(k) in the amount of $43,000. The Debtor's 2016 tax return reflects that she had adjusted gross income of $48,275, and that she owed $8,213 in taxes.[7]

The Debtor testified that after she left United Financial she struggled to find employment in the banking industry and financial sector because of her "credit problems." After applying for

various jobs the Debtor was hired at Winter Springs High School as a Guidance Secretary. In her first year working at the school in 2017, the Debtor earned wages of $23,192.53.[8] The Debtor also withdrew the remaining funds in her 401(k) in the amount of $58,355.[9] In 2018, the Debtor earned wages of $22,751.[10]

As of the trial date, the Debtor continues to work at the high school. The Debtor testified during a deposition that she is not actively seeking employment in the banking industry and financial sector because she is comfortable where she is, and that she intends to continue working within the school system because of the benefits the job offers, which includes a pension and health insurance.[11]

The Debtor's Schedule I lists her monthly net income as $1,367.91.[12] The Debtor's monthly living expenses total approximately $1,420.[13] The Debtor's monthly expenses include: $95.00 for Internet and DirectTV and $100.00 Cell-Phone Data Plan.

The Debtor testified at the trial that although she searched the internet for information regarding federal loan forgiveness, she has never applied for an income contingent repayment plan nor has she ever contacted the Department of Education to work out a repayment plan. The Defendant estimates that the Debtor's monthly payments could be as low as $49.99 under one of their repayment plans based on the Debtor's present income and family size. The Debtor acknowledges that she can afford to pay $50 a month towards the Loan.[14]

<u>Discussion</u>

Section 523(a)(8) of the Bankruptcy Code provides that a discharge under Section 727 does not discharge a debtor's student loan debt unless excepting such debt from discharge would impose an "undue hardship" on the debtor and the debtor's dependents.[15] Although the Bankruptcy Code does not define the term "undue hardship," the Eleventh Circuit adopted the

3

undue hardship standard set forth by the Second Circuit in *Brunner* to guide a court's analysis.[16]

The *Brunner* test allows a debtor to discharge student loan debt, only if the debtor proves by a preponderance of the evidence, all of the following:

> (1) That the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans;
> (2) That additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and
> (3) That the debtor has made good faith efforts to repay the loans.[17]

The Debtor asks the Court to reconsider the *Brunner* test because it is "incredibly harsh." Of course, the Court cannot simply ignore *Brunner*, because it is binding precedent. And although the Court agrees that the test is a harsh one and has had difficulty in applying it in some cases, this case is not one of them. For the reasons discussed below, this student debt will not cause the Debtor undue hardship and is therefore not dischargeable.

The first element of the *Brunner* test requires a debtor to show that she cannot maintain, based on her current income and expenses, a minimal standard of living for herself, if required to repay the student loan.[18] This prong focuses on the debtor's present ability to repay the student loan.[19] In determining whether this first prong is met, courts consider the debtor's particular circumstances, such as sources of income, expenses and any available debt restructuring options.[20] To qualify, a debtor must demonstrate that she has "maximized her ability to produce adequate income" and lives modestly with reasonable expenses.[21]

The Debtor's Schedule I reflects that her current net monthly income is $1,367.91. The Debtor estimates her monthly expenses total approximately $1,420. Included in her monthly expenses is almost $200 for internet, DirectTV and a cell-phone data plan. The Court does not consider paying almost $200 a month for these services to be a reasonable

expense or an attempt to live modestly.

Additionally, although the Court understands the Debtor's reasoning for wanting to continue to work within the school system because of the health insurance and pension benefits offered, she has failed to show that her current income is the maximum income she can reasonably make. The Debtor had a long and successful career in the banking industry and financial sector and she has not exhausted her available avenues for employment.[22]

The Defendant represented that if Debtor were to apply, she would almost certainly be eligible for repayment plans with monthly payments as low as $49.99 a month. The Debtor conceded in her deposition that she can afford to pay $50 a month.[23] The Court therefore finds that the Debtor has the ability to maintain, based on her current income and expenses a minimal standard of living if forced to repay the Loan.

The Court's inquiry could end here, and the student loans be deemed non-dischargeable. The Court will, however, address the remaining *Brunner* test elements.

The second prong of the *Brunner* test requires a debtor to prove that additional circumstances exist outside of her control, demonstrating that this state of affairs is likely to continue for a significant portion of the repayment period of the student loans.[24] This prong looks to the future and focuses on whether the debtor has proven an inability to repay the student loan during a significant portion of the repayment period.[25] To prevail on this prong, Courts require that a debtor demonstrate grim circumstances such as illness or disability, unusable job skills or care for a large number of dependents, that are likely to exist for a substantial portion of the repayment period.[26] A debtor does not satisfy the second prong by merely demonstrating employment in a low paying career without much opportunity for improvement (especially where the debtor's work history and resume allows for better

employment opportunities).[27]   Instead, a debtor must be faced with a "certainty of hopelessness" because the debtor will *never* be able to pay the student loans for reasons outside of the debtor's control.[28]   Only a debtor with rare circumstances will satisfy the second prong of the *Brunner* test.[29]

      The Debtor has not proven additional circumstances outside of her control.  The only circumstances the Court can glean from her testimony is that she does not hold a college degree and that she has "credit issues."  These circumstances are not outside of the Debtor's control. The Debtor does not have any illness, disability, unusable job skills, or any other circumstance outside her control that would prevent continued or future employment.  The Debtor also has substantial experience in the banking industry and financial sector.  Although she does not hold a college degree, this did not previously prevent her from earning a higher salary.[30]  The Debtor's assertion that she is currently employed in a low-paying job and cannot afford to pay the student loan is insufficient.  These facts do not demonstrate the rare circumstances or the "certainty of hopelessness" required by the second prong of the *Brunner* test.

      Finally, the third prong of the *Brunner* test requires the debtor to show a good faith effort to repay the student loans.[31]  This prong reviews the debtor's past conduct to determine if the debtor's actions manifest a good faith effort to repay the student loans.[32]  A court must consider the debtor's efforts to obtain employment, maximize income and minimize expenses.[33] Courts may also consider the debtor's efforts to seek other options with the lender that make repayment of the student loan less burdensome.[34]  "Where a debtor's student loan debt constitutes a high percentage of the debtor's total debt, courts have found that the Debtor has not made a good faith effort to repay the loan."[35]

6

The Debtor cannot prove the third prong of the *Brunner* test, because she failed to demonstrate a good faith effort to repay her student loan debt. The Debtor has only made one payment of $505.97 since taking out the Loan five years ago. The Debtor is also not actively seeking a higher paying job in the banking and finance industry, which she worked in for over thirty years.

Finally, the Debtor has not contacted the Department of Education to inquire as to the repayment options available to her. The Court is sympathetic to the fact that the Debtor fell on unexpected and unfortunate circumstances after the Loan was taken out, however, this does not excuse her from failing to make reasonable efforts to work out a repayment option. The Debtor's one payment, over a five-year period, reflects an unwillingness to make good faith efforts towards repaying the Loan.

## Conclusion

The *Brunner* test allows a debtor to discharge student loan debt only if the debtor meets all three elements of the test. As discussed above, the Debtor does not meet any of the elements of the *Brunner* test. Accordingly, the Debtor is not eligible to discharge her student loan debt. A separate judgment in favor of the Defendant will be entered contemporaneously with these findings of fact and conclusions of law.

---

[1] The Debtor purchased her home in 1992 for $82,000, and the current value of the home is approximately $200,000 to $256,000. (Def.'s Ex. 1, pgs. 8-9); (Def.'s Ex. 4). The Debtor paid off the mortgage in April of 2017. (Def.'s Ex. 1, p. 7).
[2] Def.'s Ex. 11.
[3] *Id.*
[4] Def.'s Ex. 1, p. 10.; Def.'s Ex. 5.
[5] Def.'s Ex. 1, p. 38.
[6] In 2015, the Debtor earned wages of $77,358 and withdrew funds from her 401(k) in the amount of $21,379 (with a tax liability of $2,138). (Def.'s Ex. 27).

---

[7] The Debtor's tax liability includes $4,446 in taxes from the funds she took out of her 401(k). (Def.'s Ex. 10.)

[8] Def.'s Ex. 7.

[9] The Debtor's tax liability on the $58,355 she withdrew from her 401(k) was $5,836. (Debtor's Ex. 4, p. 9.)

[10] Debtor's Ex. 4, p. 12.

[11] Def.'s Ex. 1, p. 44.

[12] Debtor's Ex. 3.

[13] Def.'s Ex. 6; Def.'s Ex. 1, p. 15.

[14] Def.'s Ex. 1, p. 45.

[15] 11 U.S.C. § 523(a)(8).

[16] *See In re Acosta-Conniff*, 686 Fed. Appx. 648 (11th Cir. 2017); *Hemar Ins. Corp. v. Cox, (In re Cox),* 338 F.3d 1238, 1241 (11th Cir. 2003).

[17] *Id.*

[18] *See In re Cox*, 388 F.3d at 1241.

[19] *See In re Acosta-Conniff*, 686 Fed. Appx. at 648-49.

[20] *See In re Matthews-Hamad*, 377 B.R. 415, 421 (Bankr. M.D. Fla. 2007).

[21] *See In re Vuini*, 2012 WL 5554406 at *4 (Bankr. M.D. Fla. Nov. 14, 2012).

[22] For example, the Debtor testified that she is not contacting her acquaintances from her thirty years of working within the banking industry and financial sector.

[23] The Debtor could unsubscribe from her DirectTV service, while keeping her Internet, to pay $50 towards the Debt each month.

[24] *See In re Cox*, 388 F.3d at 1241.

[25] *See In re Acosta-Conniff*, 686 Fed. Appx. 648, 650 (11th Cir. 2017).

[26] *See In re Matthews-Hamad*, 377 B.R. at 422 (citation omitted).

[27] *See In re Vuini*, 2012 WL 5554406 at *5.

[28] *Id*.

[29] *In re Matthews-Hamad*, 377 B.R. at 422 (citing *Educ. Credit Mgmt. Corp. v. Frushour (In re Frushour)*, 433 F.3d 393, 401 (4th Cir. 2005)).

[30] The Court finds it commendable that the Debtor had a successful career without a college degree and thinks it is reflective of the potential she has to obtain a job with a higher salary.

[31] *See In re Cox*, 388 F.3d at 1241.

[32] *See In re Acosta-Conniff*, 686 Fed. Appx. at 649.

[33] *See Kidd v. Student Loan Xpress, Inc. (In re Kidd)*, 472 B.R. 857, 862 (Bankr. N.D. Ga. 2012).

[34] *Id.* at 863. *See also In re Vuini at *6.*

[35] The Court takes judicial notice that this was a no-asset case and that the Debtor had a total of less than $50,000 in liability with 50% of it being this student loan. She has now received a discharge of her other liabilities. *See In re Kidd*, 472 B.R. at 862 (citation omitted)(debtor did not make good faith effort to repay the student loan because she did not actively seek employment, had discretionary expenses, never made a payment on the loan, and the student loan consists of approximately 70% of the debtor's unsecured debts).